IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOSEPH R. SARVER,                         :
                    Plaintiff             :
                                          : Civil Action No. 04-127J
JOANNE B. BARNHART, COMMISSIONER          :
OF SOCIAL SECURITY,                       :
                    Defendant             :

## Report and Recommendation

### Recommendation

Joseph Sarver appeals from the decision of the Commissioner of Social Security denying his application for disability benefits under Title II of the Social Security Act, 42 U.S.C.§§ 401-33, and supplemental security income (SSI) under Title XVI of the Act, 42 U.S.C.§§ 1381-83f. An ALJ found, on January 26, 2004, that Sarver was not disabled up to and including that date. Tr. 11-16. The Appeals Council denied review on April 6, 2004, Tr. 4-6, thus making the ALJ's findings the basis for the Commissioner's decision.

Because substantial evidence supports the ALJ's findings that Sarver was not disabled for the period in question, I recommend that the defendant's motion for summary judgment, docket no. 9, be granted, the plaintiff's motion for summary judgment, docket no. 7, be denied, and the decision of the Commissioner affirmed.

### Report

Sarver applied for benefits in March 2003, Tr. 48, alleging disability as of February of the same year because of diabetes, reading and writing problems, and pain in both feet which

caused difficulty in standing and walking.  Tr. 54.  After a hearing before an ALJ on November 14, 2003, Tr. 198-229, resulted in a finding that Sarver was not disabled through January 26, 2004, Sarver commenced this action in the district court.  The court's duty in reviewing the denial of disability benefits and SSI is to determine whether "substantial evidence," 42 U.S.C.§ 405(g), 1383(c)(3), that is, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, 402 U.S. 389, 401 (1971), supports the ALJ's finding that Sarver is not disabled.  See Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir.1999); Hartranft v. Apfel, 181 F.3d 358, 359 (3d Cir.1999).

Disability, for purposes of disability benefits and SSI, means an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than twelve months," 42 U.S.C.§§ 423(d)(1)(A), 1382c(a)(3)(A).

The ALJ used the five-step disability analysis set forth at 20 C.F.R.§§ 404.1520 and 416.920.  See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  It is not in dispute that at step one: (1) Sarver was not working after his alleged onset date; and (2) he has severe impairments, described by the ALJ as non-insulin dependent diabetes with neuropathy.  Tr. 12.  The ALJ found that Sarver did not meet the per se disability listings at step 3, Tr. 12, and see

Tr. 228, but that (4) Sarver could not return to his relevant past jobs as a maintenance man, butcher, window washer, welder, or laborer, because those were medium or heavy exertional occupations and Sarver retained the exertional capacity to perform only light and sedentary work.  Tr. 15; see Tr. 223-25; Tr. 55.  At the fifth and final step, the ALJ found that (5) Sarver, despite his nonexertional impairments, retained the residual functional capacity to do the work necessary in several light and sedentary exertion jobs existing in significant numbers in the national economy.  See Plummer v. Apfel, supra, 186 F.3d at 428 (at step five, the burden of production shifts to the Commissioner to show existence of work for claimant in the national economy.)

Sarver was 45 years old when the ALJ issued his decision, a younger individual, and had a high school diploma.  Sarver had worked as a janitor, butcher, and window washer, and most recently had worked from 1998 to 2003, as a welder, driver, and laborer for Stoystown Tank and Steel.  That was semiskilled heavy work.  See Tr. 55, 67, 223.  Sarver had been diagnosed with diabetes several years earlier, Tr. 205, for which he took Glucophage.  Sarver also had high blood pressure, diagnosed in 2002, Tr. 172, which was controlled with medication, Tr. 210.  Sarver's other notable problem was psoriasis since the age of 12, Tr. 171, the itching from which was controlled with medication.  Tr. 220.  His records of treatment by a urologist, Tr. 142-50, do not relate to any claim of a

disabling condition. The records of his primary care physicians at Medical Associates of Boswell from 1999 until 2003, Tr. 101-22, reflect regular office visits for conditions related to Sarver's diabetes and psoriasis, as well as for the usual colds, an injury to his right heel in January 2002, an injury to his left hand in August 2002, and epicondylitis in his right elbow in September 2002. At various times office notes relate Sarver as possibly having ankylosing spondylitis or psoriatic arthritis.

Sarver worked despite these conditions until February 2003, when he suffered episodes of severe foot pain. His primary care physicians first report a complaint of foot pain in January 2003, Tr. 116. After a study to rule out peripheral vascular disease returned normal findings, his family doctor speculated that Sarver might have gout or plantar fascitis, and prescribed Indocin, Plavix, and Colchicine on February 3, 2003. Tr. 114. Sarver went to the emergency room at Somerset Hospital on February 18, 2003, Tr. 88-92, because of complaints of acute pain in both feet. The ER physician, George Grof-Tisza, M.D., noted normal grip strength in both of Sarver's hands and normal pulses and capillary refill in both feet (with perhaps a slight weaker pulse in the left foot,) Tr. 90, and could offer no definite source for Sarver's foot pain. An x-ray study, ordered for the left foot only, was essentially normal. Tr. 123. Sarver was sent home with instructions to see his primary care physician and a foot specialist. Sarver went to his

4

family doctors on February 19, 2003, and reported that he was continuing to go to his job but had significant pain over both feet. Tr. 112.  A podiatrist, Gregory C. Spain, DPM, examined Sarver on March 10, 2003, Tr. 129-30, and reported that his physical condition was essentially unremarkable, except for his history of non-insulin dependent diabetes and his acute foot pain, which Spain diagnosed as diabetic neuropathy.  Spain noted a loss of protective and pathological reflexes in both of Sarver's feet, and he prescribed Neurontin and Vicodin for pain as needed.  Spain also ordered a nerve conduction study and electromyogram.  These were conducted by Inbum Park, M.D., on March 18, 2003, and Park reported normal results.  Tr. 127-28.  Spain saw Sarver again on March 31, 2003, and suggested Sarver see a neurologist for his complaints.  Tr. 126. Notes of a visit to Sarver's family doctor on March 12, 2003, indicated Sarver was still in pain and was "off work until the feet pain is improved."  Tr. 109 (Office notes of Mohammed Aslam, M.D.).

On April 5, 2003, Sarver again went to the ER with acute pain, this time in the meta-tarsal phalanges of the first toe on his left foot, which was severe enough to wake him from sleep.  Tr. 95-98.  The ER physician assistant on duty this time, Laura Miller, PA-C, and the attending physician, Shomendra K. Moitra, M.D., noted redness and swelling in the area of the joint, but also noted normal pulses and capillary refill.  Their opinion was that Sarver was suffering from gout-like symptoms.  An x-ray study showed minimal

5

swelling of the soft tissues on the first toe.  Tr. 99.  Sarver was sent home with a prescription anti-inflammatory, and told to see his family doctor.  Sarver saw his primary care physician on May 27, 2003, and reported that he was feeling "about the same," presumably meaning the same as his last visit, and had aches and pains which made getting on the exam table difficult.  Tr. 180.

The neurologist who saw Sarver in May 2003, Kemal R. Rastogi, M.D., evaluated him as having normal strength but some decrease in sensation in his legs, and opined that Sarver had either plantar fascitis or diabetic neuropathy.  Tr.  158-60.  Rastogi changed some of Sarver's medications (changing from Neurontin to Ultram as need for pain relief) and administered two nerve block injections to Sarver's left foot and one to his right foot on June 9, 2003.  Rastogi scheduled Sarver for a return office visit in September 2003.

In July 2003, Sarver saw Sherwood M. Chetlin, M.D., a rheumatologist. Tr.  171-77.  Chetlin believed that it was unlikely that Sarver had rheumatoid arthritis, that psoriatic arthritis was possible but not likely, and that controlling his blood pressure should be Sarver's priority.  Tr. 173.  Chetlin noted normal strength, reflexes and range of motion in Sarver's upper extremities, and noted only some compressive tendencies in an otherwise normal examination of Sarver's feet.  At the end of July, Sarver saw his family physicians for a follow up of his blood

6

pressure care, and there are no specific complaints about foot pain. Tr. 179. The only later record of a medical care provider is an office note dated August 27, 2003, incorporating a letter from the Department of Public Assistance recommending a work capacity evaluation and noting that the Office of Vocational Rehabilitation would not work with Sarver, because of his expressed lack of interest in going back to work. Tr. 183. There is no record that a work evaluation was done, nor is there any record that Sarver returned to Rastogi for follow up of the nerve blocks.

Diagnoses of medical conditions, like diabetic neuropathy, psoriasis, and hypertension, which are not accompanied by impairment of functional capacity do not rise to the level of a disabling condition. Petition of Sullivan, 904 F.2d 826, 844-45 (3d Cir.1990)(alcoholism); see also 20 C.F.R. §404.1530(b). The limitation of functional capacity that is most significant to Sarver's claim is obviously the reduction in Sarver's ability to stand, walk, or use his feet to operate pedals or controls as a result of his foot pain: if that nonexertional limitation precludes all work, Sarver is disabled. If the pain and associated limitations are only partially disabling, then a job with limited use of the lower extremities might be less comfortable than desired but not beyond Sarver's residual functional capacity. The ALJ found Sarver's foot pain impaired his walking and balancing, and took the reported side effects of his medications into account, accepting

7

that they caused Sarver occasional shakiness and headaches.  The ALJ therefore limited possible jobs for Sarver to ones not requiring much concentration or memory, and which did not require climbing or stooping or working around moving machinery.  Tr. 225.  The ALJ heard testimony from a vocational expert that if an individual of Sarver's age, education, and experience were still able to do work with these limitations, that is, simple routine work that allowed a worker to sit or stand and occasionally elevate his feet, and which moderately limited the use of his feet to push or pull controls, then Sarver could do the light jobs of ticket seller, coupon redemption clerk, or survey worker, as well as several sedentary jobs.  These jobs amounted to several hundred thousand positions in the national economy.  Tr. 225-226.  The ALJ rejected Sarver's proposed additional limitation that Sarver would miss five to seven days work every three months, Tr. 227-28, and was not without a basis to do so, since there are no medical reports to support such a limitation.

The ALJ had substantial evidence to support his conclusion that Sarver's condition was not disabling, chiefly the lack of evidence that Sarver's condition was of disabling severity.  The foot pain that allegedly disabled Sarver since February 2003, had by the date of the ALJ hearing resulted in two ER visits and consultations with specialists in podiatry, rheumatology, and neurology.  No one who saw Sarver, whether treating or consulting,

8

gave an opinion that Sarver suffered from a disabling condition: Aslam's comment at Tr. 109 that Sarver was off work until the pain in his feet improved, noted above, implies a belief not only that Sarver's condition was not disabling, but that Sarver possibly could return to his former heavy exertion job. Although Sarver described his foot pain as intolerable, the physicians examining Sarver generally reported normal sensation, muscle strength, and reflexes in the rest of his body and do not report any deterioration of his general physical condition. Aside from minor medication changes, the only intervention Sarver received for his foot pain was a set of nerve blocks, which Sarver testified were partially effective. Tr. 207 ("...for the first month, the pain [is] ... not as sharp... at least I can walk on it without being in a lot of pain.") See also Tr. 179 (no complaints of foot pain.) The record did not contain records of the September set of nerve blocks which Sarver stated Rastogi had performed, nor did it contain what Sarver stated was Rastogi's opinion, that his condition would never get any better. Tr. 209. Nor did Sarver's family doctors record complaints of pain in their office notes after April 2003, at anywhere near the intensity Sarver testified to at the hearing, despite that practice's years of familiarity with a wide range of complaints by Sarver. The ALJ also had the opinion of a state disability agency retained physician that Sarver could do light work, which the ALJ noted did not take into account Sarver's medical history through the

summer of 2003, but which likewise was not contradicted by any of Sarver's subsequent medical records.  See Tr. 14.

The ALJ's hypothetical to the vocational expert was not the only hypothetical that could have been offered, but it reflected the range of limitations that the ALJ could correctly have found Sarver to have, and the vocational expert's testimony that Sarver could do some light work was therefore a substantial basis for finding Sarver not disabled.  The Commissioner's decision to deny benefits for the time period at issue was supported by substantial evidence and must be affirmed.

Pursuant to 28 U.S.C.§ 636(b)(1), the parties are given notice that they have ten days to serve and file written objections to this Report and Recommendation.

DATE:___1/26/06_____

_____
Keith A. Pesto,
United States Magistrate Judge

CC:

John Burt, Esquire
Suite 810 Arrott Building
401 Wood Street
Pittsburgh, PA 15222

John J. Valkovci, Jr., Esquire
224 Penn Traffic Building
319 Washington Street
Johnstown, PA 15901